DANIEL GOODRICH *vs.* JACOB PROCTOR.

A father conveyed land to his son L. his heirs and assigns, upon condition that the land be charged with one half of the debts which the grantor might owe at his decease, and upon trust to apply the rents and profits to the use and benefit of the grantor's other son B. for life, and upon B.'s decease, to convey the land to B.'s surviving children, or if he should leave no children, to his heirs at law. *Held,* that a conveyance, made by L., after a sale by auction without license or order of court, but purporting to be made for the purpose of paying said debts, passed a good title, although the price obtained was affected by the doubts entertained of L.'s right to sell; and that the purchaser was not bound to see to the application of the purchase money.

SHAW, C. J. This is a writ of entry, brought by the plaintiff, as trustee appointed by this court, in place of his father, Levi Goodridge, deceased. The leading facts, submitted on a brief statement, are these: Benjamin Goodridge, Sen. father of Levi and of Benjamin Goodridge, Jr. on the 3d of May 1832, being owner in fee of an estate including the premises claimed in this suit, made a deed of conveyance to his son Levi in fee, in trust for his son Benjamin Goodridge, Jr. This deed is very peculiar. It describes three parcels of land. After the description of two

of them, are these words : " Upon condition that the land, within conveyed, be charged with one half of my debts, which I may owe at my decease, including those secured by mortgage." Whether this condition applies to the whole of the three parcels, or to the first two only, is not perhaps material, because, as we understand, the parcel sued for in this action was included in one of the two parcels first described, and thus charged. The habendum is, to said Levi Goodridge, his heirs and assigns, and to his successors to be appointed by the supreme judicial court to execute said trust, " upon trust and confidence nevertheless to receive the rents and profits yearly and every year, and to apply them to the use and benefit of the said Benjamin Good-ridge, junior, during his life, and upon the decease of the said Benjamin, junior, in trust to convey the same premises to the lawful children of the said Benjamin, junior, who shall survive him, in equal shares; but if the said Benjamin, junior, should die, leaving no lawful children, then in trust for the heirs of said Benjamin, junior, to be divided according to law among them."

Here then was a conveyance by deed to the grantee, his heirs and assigns, in trust, which conveyance, or at least that part of the estate conveyed, which is the subject of this suit, was charged with the payment of one half of the grantor's debts, including debts secured by mortgage.

Such was the trustee's title on the 11th of January 1837, when he made a deed of the demanded premises to the tenant in this suit. This deed purports to be made by the grantor as trustee for Benjamin Goodridge, Jr. and for the purpose of paying said Benjamin's half of the debts of his father, and in consideration of $284.43 paid by the tenant; and the trust and purpose for which the deed is given, is again stated in the descriptive part of the deed. The question is, whether this conveyance made a good title to the grantee, tenant in this suit.

In many cases, it may be important to distinguish between cases where there is such a failure of power, or violation of duty, on the part of the trustee, as to render his acts void and inoperative to transfer a legal title to the purchaser, and those violations of fiduciary duty, which amount to such an abuse of the trust

and confidence reposed in the trustee, as to render him, and those, who take with notice of the trust and of the trustee's purpose, and intending to collude with him in such purpose, amenable in a court of equity, to those entitled to the benefit of such trust. We have found no occasion to make that distinction in the present case, and therefore reserve it until it may necessarily arise.

In the present case, it is very manifest, that the trustee took an estate in fee ; it was to him, his heirs and assigns, and whether the limitation to successors to be appointed by this court, to take effect only after such appointment, was of any avail or not, the estate to the first grantee, Levi Goodridge, was an estate in fee. Having an estate in himself, a right of property, by the general law applicable to real property, he had a right, *prima facie*, to pass that title to another, and his grantee would take a legal title. The difference between such trustee, and an executor, administrator or guardian, as to the necessity of obtaining a license to sell according to law, is, that the latter executes a mere naked power, and to give validity to his act, it must appear not only that he had such power, but that his deed or act was in strict conformity with it, otherwise the property does not pass.

It was argued on the part of the demandant, that unless a license or decree was obtained by the trustee, the estate could not pass by his deed. We think that was a mistake arising from not observing the distinction between one who has a fee and transfers his own estate, and one who can only act as empowered, in transferring the property of another. Undoubtedly it is a frequent practice for a trustee to apply to a court having jurisdiction over trusts and trust estates, for permission to sell, on particular occasions and for particular purposes, of which such court has power to judge ; and in the new and somewhat imperfect understanding and practice of the law, upon this subject, it is wise and expedient, and often necessary, to do so ; and the statutes have provided for granting such license upon summary application. *Sts.* 1845, *c.* 64; 1846, *c.* 242. But often this is done *ex majori cautela,* in order that a trustee, in the exercise of his powers and duties, may be assured of protection

48 *

both in courts of equity and courts of law. But it leaves the question open, whether an estate will not pass by the deed of the trustee, without a license.

In the present case, the estate was conveyed to the trustee in fee, charged with the payment of one half of the grantor's debts, not specified, nor could they be specified, because they were the debts which might be due at the time of his decease. And though this charge is expressed in the form of a condition, it is, in legal effect, rather a charge than a technical condition; it binds the land to such payment, and the trustee takes it subject to this charge. In order to execute his trust, and save the estate from forfeiture, for the benefit of his *cestui que trust*, he must raise the money for the payment of such debt, and this can only be done by a sale; therefore he must sell. It is part of his duty as trustee, and of course within the scope of his fiduciary authority. Take the familiar case of a conveyance of real and personal property to trustees for the payment of the settler's debts; of necessity, the estate must be sold to raise money for such payment, the estate is vested in the trustees by the deed of an owner, it is within the scope of their fiduciary authority to sell, therefore they have no occasion to obtain license to sell, their own deed transfers a good title to the purchaser. *Purdie* v. *Whitney*, 20 Pick. 25. *Gould* v. *Lamb*, 11 Met. 84.

And the court are of opinion, that in these circumstances, whatever may be the rule where the trust is to pay a specified debt, or otherwise make a specific appropriation of the proceeds of a sale of the trust property, no duty or obligation, legal or equitable, was imposed on the purchaser to see to the application of the proceeds of sale. When the trust is to raise money for the payment of the settler's debts generally, it is impossible for the purchaser to know what those debts are; it is part of the duty confided to the trustee, to sell for the payment of debts; no doubt it is his duty as trustee, and within the scope of the confidence reposed in him, faithfully to apply the proceeds of sale to the object specified; but we do not consider it the duty of the purchaser to see to that application, and therefore, whether so applied or not, by the trustee, it cannot affect his title. *Jenkins*

v. *Hiles*, 6 Ves. 654, *note*. *Balfour* v. *Welland*, 16 Ves. 151. *Andrews* v. *Sparhawk*, 13 Pick. 393.

The deed, under which the tenant purchased, purporting to onvey the estate by the grantor as trustee, and for the purpose of carrying into effect the intent of the settlement in trust, it was all the evidence which the purchaser needed, or could have, to assure him that the conveyance was necessary, and was designed to effect the payment of debts. The court are therefore of opinion, that under this conveyance the tenant acquired a good title, and is entitled to judgment.

A point was made, that the tenant has no equitable claim here, because he gave less than the true value, on account of the doubts prevailing among people, whether the trustee could give a good title to it. It appears that the estate was sold at auction and that the tenant was the highest bidder. It was not the fault of the tenant that other people had doubts and fears of the title, and that no bid higher than his own was made; and though it might have been more prudent for the trustee to procure a license from a court of competent authority, we think it cannot affect the title of the purchaser.

*Demandant nonsuit.*

*F. H. Dewey,* for the demandant.
*N. Wood,* for the tenant.